UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT RODRIGUEZ, ET AL., | : | |
|     Plaintiffs, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-01816 (JCH) |
| | : | |
| BEAR STEARNS | : | |
| COMPANIES, INC., ET AL. | : | NOVEMBER 4, 2008 |
|     Defendants. | : | |

**RULING RE: DEFENDANT'S MOTION TO STRIKE [Doc. No. 46],
MOTION TO TAKE JUDICIAL NOTICE [Doc. No. 48], AND
MOTION TO DISMISS [Doc. No. 49]**

**I.     INTRODUCTION**

The plaintiffs, Scott Rodriguez, Nisha and DeJoy Modica ("the Modicas"), and Tammy Smith (collectively "the plaintiffs"), bring this class action against defendants Bear Stearns Companies, Inc. ("Bear Stearns") and EMC Mortgage Corporation ("EMC") (collectively "the defendants"). The plaintiffs are minorities allegedly injured by the defendants' discriminatory practices in the writing and servicing of residential mortgage loans. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs bring this action to obtain relief for themselves and all other African-American and Hispanic/Latino borrowers who, beginning in January 1, 2001, had, or continue to have, a non-prime residential loan serviced by the defendants ("the class").

At all times relevant to this action, Bear Stearns was a Delaware corporation with its principal place of business in New York, and was a leading issuer of securities backed by near-prime and subprime mortgages. EMC was a wholly-owned subsidiary of Bear Stearns headquartered in Lewisville, Texas, and was one of the nation's largest mortgage loan servicing companies.

1

The plaintiffs assert two claims against the defendants: 1) race discrimination in violation of 42 U.S.C. § 3605; and 2) deprivation of civil rights in violation of 42 U.S.C. §§ 1981, 1982. The defendants have moved to dismiss the plaintiffs' Amended Complaint on the grounds that it fails to state a claim upon which relief can be granted; moved to strike certain paragraphs from the plaintiffs' Amended Complaint; and moved for judicial notice of certain news articles, financial reports, and other materials chronicling Bear Stearns' success in underwriting mortgage-backed securities between 2003 and 2006.

For the reasons stated below, the defendants' Motion to Dismiss [Doc. No. 49] is **GRANTED**, and its Motion to Strike [Doc. No. 46] and Motion to Take Judicial Notice [Doc. No. 48] are **DENIED AS MOOT**.

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss, the court accepts the allegations of the complaint as true and construes them in a manner favorable to the pleader. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005).

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests only the adequacy of the complaint. United States v. City of N.Y., 359 F.3d 83, 87 (2d Cir. 2004). In deciding such a motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Federal Rule of Civil Procedure 8(a) provides that to be sufficient, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In the recent decision of Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), however, the Supreme Court explained that to be sufficient, factual allegations in a complaint must "'raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965). According to the Second Circuit, what Twombly requires is not "a universal standard of heightened fact pleading," but rather "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007).

Thus, at a bare minimum, the operative standard requires the "plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965). Consequently, a plaintiff has an obligation to provide the grounds of his entitlement to relief using "more than labels and conclusions." Twombly, 127 S.Ct. at 1964-5.

### III. BACKGROUND

Plaintiffs' Amended Complaint [Doc. No. 39] contains both specific factual allegations concerning the named plaintiffs and general allegations concerning the class the named plaintiffs purport to represent. The allegations will be addressed

3

separately.

   A.   <u>Predatory Loan Servicing Allegations Concerning the Named Plaintiffs</u>

   1. Scott Rodriguez

Plaintiff Scott Rodriguez and his wife, Heather Rodriguez, reside in Waterbury, Connecticut in a home they own. Amended Complaint ("Amd. Complaint"), ¶ 58. The Rodriguezes refinanced their residential mortgage loan in 2005 with Town and Country Credit Corporation. Id. at ¶ 59. In 2005, EMC purchased the loan from Town and Country Credit Corporation and assumed all responsibility for servicing the loan. Id. at ¶ 61. EMC's obligation to service the loan included paying the Rodriguezes' property taxes to the City of Waterbury out of an escrow account kept for that purpose. Id. at ¶¶ 64-65. The Rodriguezes allege that EMC failed to pay the property taxes for the second half of 2005. Id. at 64. Despite repeated calls and faxes from the Rodriguezes, EMC never corrected this error, leading to a tax lien from the City of Waterbury being placed on the Rodriguez residence in March 2006. Id. at ¶¶ 65-66.

Furthermore, because EMC never corrected the Rodriguezes' escrow account to reflect the true tax payment schedule, the Rodriguezes' monthly mortgage payment increased in July 2006. Id. at ¶ 67. Thus, when the Rodriguezes continued with their usual payments, EMC did not deem them full payments and placed the monies in EMC suspense accounts. Id. Consequently, EMC subsequently notified the Rodriguezes that they were in default on their loan. Id. After the default, the Rodriguezes elected to refinance their loan with another mortgage company to escape EMC's predatory practices. Id. at ¶ 68. As a result, the Rodriguezes incurred over $10,000 in expenses and continue to have incorrect derogatory information on their credit histories, which

4

has led to the denial of financing on other attempted purchases.  Id. at ¶¶ 68-69.

     2.  Nisha and Dejoy Modica

In June 2005, Nisha and Dejoy Modica took out a residential mortgage loan from Greenpoint Mortgage Funding, Inc. for a residence in Phoenix, Arizona.  Id. at ¶ 71.  In July 2005, EMC purchased the Modicas' mortgage.  Id. at ¶ 73.  Despite the fact that the Modicas consistently made timely payments to EMC, in October 2006 EMC informed the Modicas that their account was in collection due to late payments.  Id. at ¶¶ 73-74.  Some weeks later, EMC wrote to the Modicas admitting that they had erroneously put the Modicas' account on delinquent status, and that the Modicas had, in fact, made timely payments.  Id. at 74.  Due to EMC's mistake, derogatory information was placed in the Modicas' credit report, which led to the Modicas being denied refinancing and being forced to pay higher interest rates on subsequent loans.  Id. at ¶¶ 75-76.

     3.  Tammy Smith

Tammy Smith owns a home in Baton Rouge, Louisiana.  Id. at ¶ 77.  In May 1999, she refinanced her home loan through Superior Bank.  Id.  EMC purchased Smith's mortgage from Superior Bank in 2001.  Id.

In February 2003, Smith mailed a bank check, which she paid for in cash, to EMC for her monthly mortgage payment.  Id. at ¶ 78.  Smith alleges, however, that EMC failed to credit her February 2003 payment, leading to an erroneous late fee.  Id.  The following month, when Smith again made a timely mortgage payment, EMC applied the payment to February, thereby causing Smith to incur yet another erroneous late fee.  Id.  Upon discovering the late fees in April 2003, Smith contacted EMC daily, but the

error was not corrected. Id. The continuing accumulation of fees resulted in over $1,000 in late fees being applied to Smith's account. Id.

In August 2005, Smith's home was damaged by Hurricane Katrina. Id. at ¶ 79. To compensate Smith for the damage to her home, her insurer issued a check in December 2005 for approximately $6,697, made payable to both Smith and EMC. Id. When Smith called EMC regarding the check, EMC refused to release its interest in the funds due to the late fees on Smith's account. Id. In order to retrieve the monies needed to repair her home, Smith entered into a forbearance agreement with EMC in February 2006 in which she agreed to pay over $1,000 in late fees and agreed to have her monthly payment increased by over $130 per month, despite the erroneous nature of the fees. Id. at ¶¶ 78-79.

B.  Discrimination Allegations Concerning The Class

The plaintiffs allege that, at the direction of Bear Stearns, EMC engaged in unfair and predatory loan servicing practices that targeted and exploited non-prime borrowers, resulting in a disparate impact on Hispanic and African-American mortgage holders. Id. at ¶ 3. Specifically, EMC routinely and systematically mismanaged Hispanic and African-American customers' mortgage loans by charging unauthorized fees and refusing to properly credit payments. Id. These practices, in turn, caused many borrowers to become trapped in a downward spiral ending in foreclosure. Id.

Further, plaintiffs allege that this predatory loan servicing scheme was predicated on the defendants' knowledge that there exists a higher proportion of minorities in the non-prime residential lending market than in the population as a whole, and on the defendants' belief that Hispanic and African-American borrowers are less sophisticated

financial consumers than Caucasian borrowers.  Id. at ¶¶ 30- 31.  Finally, the plaintiffs allege that the defendants' actions against the named plaintiffs are part of their practice of intentionally and systematically targeting minorities for predatory loan servicing, and that the injuries of the named plaintiffs are representative of the injuries of class members.

IV.	ANALYSIS

The defendants move to dismiss on the grounds that the plaintiffs' Amended Complaint does not meet the pleading requirements set out in Twombly and clarified in Iqbal.  Specifically, the defendants argue that the plaintiffs fail to allege any facts that would render their claims plausible.  The court agrees.

As noted above, in order to survive a motion to dismiss, a pleading must a meet a "flexible plausibility standard," which obliges the pleader to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007).  This is such a context.

Plaintiffs allege that defendants -- two major financial institutions -- planned and executed a sophisticated, eight-year, multi-million-dollar scheme to defraud, and discriminate against, thousands of minority mortgage holders based on their race and ethnicity.  In support of this claim, the only specific factual allegations plaintiffs offer are those relating to the three named plaintiffs, who are minorities.  However, the complaint contains no information suggesting the defendants' actions were motivated by racial or ethnic animus.  The remainder of plaintiffs' allegations are conclusory and unsupported by factual allegations.

7

As a result, while the Amended Complaint offers a detailed theory explaining why defendants' purchase of massive quantities of non-prime loans was intended to exploit minority borrowers, it does not offer the factual allegations necessary to render this theory plausible. The plaintiffs have failed to plead facts sufficient to "raise a right to relief above a speculative level," and therefore dismissal under Rule 12(b)(6) is appropriate. Twombly, 127 S. Ct. at 1965.

## V. CONCLUSION

For the reasons discussed herein, Bear Stearns's Motion to Dismiss [Doc. No. 49] is **GRANTED**, and plaintiffs' Amended Complaint is dismissed without prejudice. In light of the dismissal, plaintiffs' Motion to Strike [Doc. No. 46] and Motion to Take Judicial Notice [Doc. No. 48] are **DENIED AS MOOT**. The clerk is directed to close this case.

The plaintiffs have the right to reopen the case by filing, within 21 days, an amended complaint asserting claims based on the alleged mishandling of their mortgage accounts. Further, plaintiffs have leave to file claims concerning their discrimination claims if they contain sufficient factual allegations.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 4th day of November, 2008.

                                                  /s/ Janet C. Hall
                                                  Janet C. Hall
                                                  United States District Judge