**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SCOTT RODRIGUEZ, ET AL., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 07-cv-1816 (JCH) |
| v. | : | |
| | : | |
| BEAR STEARNS | : | |
| COMPANIES, INC., ET AL. | : | MARCH 9, 2010 |
| Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION TO ALTER AND AMEND JUDGMENT AND FOR RECONSIDERATION OF RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 212)**

**I.   INTRODUCTION**

On November 25, 2008, plaintiffs, Scott Rodriguez, Nisha and DeJoy Modica, and Tammy Smith (collectively "the plaintiffs"), filed the Second Amended Complaint ("2d Amd. Cmplt.") (Doc. No. 101) against defendants, Bear Stearns Companies, Inc. and EMC Mortgage Corporation ("EMC") (collectively "the defendants"). In the Second Amended Complaint, plaintiffs claimed both that defendants' allegedly predatory lending practices constitute intentional racial discrimination in violation of 42 U.S.C. § 1981 and 1982, and that those practices have a disparate impact on racial minorities in violation of the Fair Housing Act ("FHA"), codified at 42 U.S.C. § 3601, *et seq*.

On January 15, 2009, defendants moved to dismiss that Second Amended Complaint for failure to state a claim upon which relief can be granted. In an April 14, 2009 Ruling, the court granted the defendants' Motion to Dismiss with respect to plaintiffs' intentional racial discrimination claim under 42 U.S.C. sections 1981 and 1982, but denied the Motion to Dismiss with respect to plaintiffs' disparate impact claim under the Fair Housing Act. See Ruling Re: Mot. to Dismiss (Doc. No. 125) at 23-24.

On July 10, 2009, defendants filed a Motion for Summary Judgment with respect to the remaining disparate impact claim. See Defendants' Motion for Summary Judgment ("Mot. for Summ. Judg.") (Doc. No. 153).  In a Ruling dated December 22, 2009, the court granted the Motion for Summary Judgment.  See Ruling Re: Mot. for Summ. Judg. ("Ruling") (Doc. No. 210).  Plaintiffs now move the court to reconsider that Ruling.  See Motion to Alter and Amend Judgment and For Reconsideration ("Mot. for Recons.") (Doc. No. 212).  For the following reasons, plaintiffs' Motion is denied.

## II.   STANDARD OF REVIEW

The Second Circuit has held that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice.  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).  That the court overlooked controlling law or material facts may also entitle a party to succeed on a motion to reconsider.  Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (per curiam) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.") (internal quotation marks omitted).

**III.   DISCUSSION**

Plaintiffs offer three grounds as to why the court should reconsider its December 22, 2009 Ruling. First, plaintiffs contend that the court only addressed the issue of whether EMC treated non-prime loans differently from prime loans, and in doing so overlooked plaintiffs' disparate impact theory of liability. Second, plaintiffs contend that the court overlooked studies that allegedly create a genuine issue of material fact as to whether minorities are disproportionately represented in non-prime lending populations, and are therefore disproportionately represented in EMC's customer base. Finally, plaintiffs argue that the court's analysis with respect to plaintiffs' Rule 56(f) Motion overlooked both the September 15, 2009 discovery deadline, and the efforts plaintiffs made to obtain the data necessary to conduct a disparate impact analysis.

At the outset, the court notes that, in order to make out a prima facie case under the FHA on a theory of disparate impact, a plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 575 (2d Cir. 2003). In its Ruling, the court concluded that plaintiffs had not only failed to create a genuine issue of material fact as to whether there was a disproportionate impact on minorities, but also had failed to identify a particular, outwardly-neutral practice. See Ruling at 12-18. In its Motion for Reconsideration, however, plaintiffs only raise issues that relate to the "disproportionate impact" prong of their FHA claim. See generally Mot. for Recons. Therefore, even if the court were to reconsider its Ruling on the bases that plaintiffs suggest, summary judgment would still be appropriate because plaintiffs have not

identified an outwardly neutral practice. Nonetheless, the court will address each of plaintiffs' arguments in turn.

      A.      <u>Disparate Impact Theory of Liability</u>

Plaintiffs first contend that the court's Ruling addressed only one component of plaintiffs' claim, namely the argument that EMC treated non-prime loans differently than prime loans, and that this disparate treatment had a disparate impact on minorities whose loans were serviced by EMC. Plaintiffs allege that the court's analysis ignored the other dimension of plaintiffs' FHA claim, namely, whether EMC's servicing disparately impacted minorities compared to similarly situated Caucasians, as evaluated by comparing "EMC's servicing on its borrowers in comparison to the servicing results of all non EMC serviced mortgage borrowers as a whole." Mot. for Recons. at 3.

Contrary to plaintiffs assertions, the court did not overlook any element of plaintiffs' position, but instead gave attention to the nature of the comparison that should be made in the court's analysis. <u>See</u> Ruling at 20-21. In <u>Tsombanidis</u>, the Second Circuit specifically held that, in a disparate impact claim, a plaintiff must provide "a comparison between two groups – those affected and those unaffected by the facially neutral policy." <u>Tsombanidis</u>, 352 F.3d at 577. Based upon the Tsombanidis decision -- as well as the comparisons rendered in other disparate impact cases, including <u>Schwarz v. City of Treasure Island</u>, 544 F.3d 1201 (11th Cir. 2008) and <u>Gamble v. City of Escondido</u>, 104 F. 3d 300, 306 (9th Cir. 1997) -- the court specifically determined that the proper analysis "would compare how EMC's loan servicing policies impact African-American and Hispanic borrowers with how those policies impact non-

minority borrowers." Ruling at 21.

This conclusion was also reached on account of the fact that the "outwardly neutral practice" plaintiffs identify in their Second Amended Complaint is EMC's "predatory servicing of non-prime loans." Opposition to Mot. for Summ. Judg. at 18. Indeed, even in their Motion for Reconsideration, plaintiffs assert that "the issue is the disproportionate disparate impact on minorities that is caused by predatory servicing of non-prime loans." Mot. for Recons. at 3. In light of the fact that plaintiffs themselves identify the critical issue of this case to be whether EMC's policies with respect to non-prime loans have a disproportionate impact, the court concludes that the analysis it undertook in its Ruling was appropriate and comprehensive. Comparing EMC's total loan population (including prime and non-prime loans) with all loans serviced by other companies does not constitute the proper analysis. As plaintiffs describe in the Motion for Reconsideration, the court considered "the issue of whether EMC treated non-prime loans differently than prime loans, and if so, whether that difference had a disparate impact on minorities whose loans were serviced by EMC." Mot. for Recons. at 2. Plaintiffs identify precisely this question as the critical issue before the court. Because the court addressed the totality of plaintiffs' claims in its Ruling, and because plaintiffs do not now point to "controlling decisions or data that the court overlooked," the Motion for Reconsideration is denied on this ground. Shrader, 70 F.3d at 257.

> B. Studies Regarding Disproportionate Representation of Minorities in Non-Prime Loan Populations

Plaintiffs next argue that the court overlooked statistical evidence that they provided which creates a genuine issue of material fact as to whether minorities are

disproportionately represented in non-prime lending and therefore disproportionately represented in defendants' customer base. See Mot. for Recons. at 7-8. Plaintiffs contend that they "set forth studies both in their Second Amended Complaint and in their Motion for Summary Judgment which show that minorities receive non-prime loans in greater proportion than non-minorities." Id. at 7. Specifically, plaintiffs point to 2006 HMDA Data, included in the Federal Reserve Bulletin of December 2007. Id.

In its Ruling, the court specifically addressed this data that plaintiffs offered. See Ruling at 30. The court noted that "plaintiffs point to general studies" regarding the proportion of minorities within the non-prime residential lending market, and cited to the reports plaintiffs now claim the court overlooked. Id. With respect to this evidence, the court concluded:

> [It] fails to demonstrate a genuine issue of material fact as to whether EMC's policies have a disparate impact on minorities. Plaintiffs make no effort to link the studies to the Class period. Furthermore, general evidence as to the identity of the entire population of non-prime borrowers (without proof that *every* non-prime borrower is a minority) is entirely insufficient to support the premise that minorities were overrepresented among *EMC's* non-prime borrowers and therefore disproportionately impacted by EMC's allegedly predatory policies with respect to non-prime loans.

Id. Because the court addressed these matters that plaintiffs now contend the court ignored, and because plaintiffs have not pointed to "controlling decisions" or "factual matters" that the court overlooked, the Motion for Reconsideration is denied on this ground. Eisemann v. Greene, 204 F.3d at 395 n.2.

C. Rule 56(f) Motion

Finally, plaintiffs argue that the court should reconsider its Ruling because they

diligently sought evidence within the discovery period, and the court therefore erred in its analysis of plaintiffs' Rule 56(f) Motion.  See Mot. for Recons. at 8-12.  Specifically, plaintiffs argue that the court (1) erred in identifying a discovery deadline of April 15, 2009, and not of September 15, 2009; and (2) erred in concluding that the plaintiff failed to make an effort to obtain the evidence targeted in their Rule 56(f) Declaration.  Id.

        1.      Discovery Deadline

Plaintiffs contend that the court erroneously stated that discovery was to be completed by April 15, 2009, when in fact discovery was scheduled to be completed by September 15, 2009.  Id. at 8.  As defendants thoroughly explain, however, this claim misconstrues the court's scheduling orders.  See Opp. to Mot. for Recons. (Doc. No. 213) at 11-13.  The court set a discovery deadline of April 15, 2009 in a March 10, 2008 Order.  See March 10, 2008 Ruling (Doc. No. 38) at 1.  While plaintiffs contend that "[n]either the parties nor the Court have operated under the assumption that the March 2008 Scheduling Order controlled deadlines related to the Second Amended Complaint," in actuality, the court never modified the April 15, 2009 deadline.  Mot. for Recons. at 8.  To the contrary, the court specifically granted defendants an extension of time to respond to the Second Amended Complaint "on the understanding that no deadlines are effected, which would mean that discovery could not be stayed."  December 3, 2008 Order (Doc. No. 103).

After the April 15, 2009 discovery deadline passed, there remained several unresolved discovery matters, several of which were referred to Magistrate Judge Fitzsimmons.  On July 1, 2009, this court issued a Ruling regarding the remaining three Fed. R. Civ. P. 30(b) depositions.  See July 1, 2009 Ruling (Doc. No. 152).  In that

Ruling, the court stated that it "expects that any 'follow up' discovery to the Fed. R. Civ. P. 30(b) depositions will be completed in advance of September 15, 2009."  As clearly articulated by the court, the September 15, 2009 date was only identified as the deadline for filing "follow up" discovery related *specifically to the three depositions*; the date was not meant to, and cannot be interpreted to have been intended to, alter the April 15, 2009 deadline, especially considering that Ruling was issued over two months after the April 15, 1009 deadline had already passed.  Therefore, the court is entirely unpersuaded by plaintiffs' attempts to cast September 15, 2009 as the actual discovery deadline.

          2.        Efforts to Obtain Information

Plaintiffs also argue that, contrary to the court's conclusion in its December 22, 2009 Ruling, plaintiffs had diligently pursued discovery, and that their Rule 56(f) Motion was adequate.  See Mot. for Recons. at 10-12.  The court thoroughly and definitively addressed plaintiffs' Rule 56(f) Motion -- and the efforts plaintiffs made to obtain the requested materials -- in its Ruling.  See Ruling at 24-29.  Plaintiffs do not raise any new arguments with respect to this issue in their Motion for Reconsideration.  Accordingly, because plaintiffs do not identify "controlling decisions or data that the court overlooked," the court denies the Motion for Reconsideration with respect to this basis.  Shrader, 70 F.3d at 257.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Reconsideration (Doc. No. 212) is **DENIED.**

**SO ORDERED**.

Dated at Bridgeport, Connecticut this 9th day of March, 2010.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge